IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| C. KAUI JOCHANAN AMSTERDAM, Individually and [as] Prime Minister of the Interim Government of The Kingdom of Hawaii, Beneficiary of the Public Trust for Native Hawaiians,<br><br>        Plaintiff,<br><br>  vs.<br><br>HAUNANI APOLIONA, Individually and in Official Capacity of Chairperson and Trustee and ALL TRUSTEES in their Individual and Official Capacity as Officers and Trustees of the Office of Hawaiian Affairs, THE OFFICE OF HAWAIIAN AFFAIRS,<br><br>        Defendants. | CV. NO. 10-00525 DAE-BMK |

## ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

On February 27, 2012, the Court heard Defendants' Motion for

Judgment on the Pleadings. C. Kaui Jochanan Amsterdam, proceeding pro se,

appeared at the hearing on behalf of himself; Robert G. Klein, Esq., appeared at

the hearing on behalf of Defendants. After reviewing the motion and the supporting and opposing memoranda, the Court GRANTS Defendants' Motion for Judgment on the Pleadings. (Doc. # 38.)

BACKGROUND

Hawaii became a state via the Admission Act of 1959, Pub. L. 86-3, 73 Stat. 4. Under the Admission Act, the United States granted the State of Hawaii "title to all the public lands and other public property within the boundaries of the State of Hawaii[.]" Id. § 5(b)–(e), 73 Stat. at 5–6. Section 5(f) of the Admission Act provides that these lands would be held by the State of Hawaii "as a public trust" to be "managed and disposed of for one or more of" the following five purposes: (1) for the support of public schools and other public educational institutions; (2) for the betterment of the conditions of native Hawaiians; (3) for the development of farm and home ownership; (4) for the making of public improvements; and (5) for the provision of lands for public use. Id. § 5(f), 73 Stat. at 6. "[U]se for any other object shall constitute a breach of trust for which suit may be brought by the United States."[1] Id. The Office of Hawaiian Affairs ("OHA") is a Hawaii state agency that administers a portion of the § 5(f) trust's

---

[1] Case law interprets § 5(f) to create a private right of action for a breach of the federal trust. See, e.g., Day v. Apoliona, 616 F.3d 918, 924 n.4 (2010).

2

proceeds, as well as other funds.² See generally, Haw. Rev. Stat. ch. 10; Day v. Apoliona, 616 F.3d 918, 921 (9th Cir. 2010).

PROCEDURAL BACKGROUND

On September 13, 2010, Plaintiff C. Kaui Jochanan Amsterdam, proceeding pro se, filed a Complaint (Doc. # 1) and Motion for Temporary Restraining Order (Doc. # 2) against the Office of Hawaiian Affairs ("OHA") and OHA Chairperson Haunani Apoliona ("Apoliona").³ Plaintiff also filed a Motion for Leave to Proceed in Forma Pauperis. (Doc. # 5.) On September 17, 2010, the Court denied Plaintiff's Motion for a Temporary Restraining Order. (Doc. # 6.) The same day, United States Magistrate Judge Barry M. Kurren granted Plaintiff's Motion to Proceed in Forma Pauperis. (Doc. # 7.) On October 25, 2010, Defendants filed a Motion for Judgment on the Pleadings ("Mot.," Doc. # 11.) On

---

² The State of Hawaii decided that "[t]wenty per cent of all funds derived from" the § 5(f) trust should be administered by OHA to "be held and used [by OHA] solely as a public trust for the betterment of the conditions of native Hawaiians." Haw. Rev. Stat. §§ 10-3, 10-13.5.

³ The Court notes that this is not the first time that Plaintiff has filed suit in this district. Plaintiff has filed suit on at least three other occasions. (See Amsterdam v. Yoshina, 1:06-cv-00519-HG-BMK; Amsterdam v. KITV 4, 1:10-cv-00253; Amsterdam v. The State of Hawaii, 1:12-cv-00088-DAE-KSC.)

3

March 3, 2011, the Court issued an Order dismissing the complaint without prejudice for failure to comply with Federal Rule of Civil Procedure 8 and denying without prejudice Defendants' Motion for Judgment on the Pleadings. (Doc. # 20.) On the same day, Plaintiff filed an Amended Complaint. ("FAC," Doc. # 23.) On April 5, 2011, Defendants filed a Motion for Judgment on the Pleadings. (Doc. # 25.) On August 15, 2011, Plaintiff filed a Second Amended Complaint. (Doc. # 31.) On August 16, 2011, the Court issued an order (1) dismissing Plaintiff's First Amended Complaint without prejudice—again for failing to comply with Rule 8, (2) denying without prejudice Defendants' Motion for Judgment on the Pleadings, and (3) striking Plaintiff's Second Amended Complaint. (Doc. # 32.)

On September 14, 2011, Plaintiff filed the present Third Amended Complaint ("TAC") against Defendants Apoliona, "Individually and in Official Capacity of Chairperson and Trustee," all OHA Trustees "in their Individual and Official Capacity as Officers and Trustees," and OHA (collectively, "Defendants"). ("TAC," Doc. # 34.) On December 1, 2011, Defendants filed the instant Motion for Judgment on the Pleadings. ("Mot.," Doc. # 38.) On February 13, 2012,

Defendants filed a Reply. (Doc. # 41.) On February 14, 2012, Plaintiff untimely filed a Response to Defendants' Motion. (Doc. # 42.)

According to the TAC, Plaintiff is native Hawaiian and as such is a beneficiary of the 5(f) trust. (TAC ¶ 5.) Plaintiff serves as the Prime Minister of the Interim Government of The Kingdom of Hawaii, which has the goal of working "toward the advancement of Native Hawaiian self-determination and development, the restoration and advancement of The Kingdom of Hawaii and Monarchial features in honor of Queen Liliuokalani and perpetuation of Hawaiian culture, tradition, identity, and self-esteen, [sic] which is necessary in light of the disadvantage status of many Native Hawaiians, all of which are to achieve a main purpose of the 'betterment and actualization of the condition of Native Hawaiians." (Id. ¶ 6.) Plaintiff alleges that "[s]uch a purpose is consistent with those stated purposes for which the Ceded Land Funds are to be utilized" as stated in the Admission Act. (Id.)

In 2005, Plaintiff submitted a letter to OHA "requesting funds for organizing and holding Election of Officers from amongst our Hawaiian Community to restore and advance The Kingdom of Hawaii wherewithall to advance education and self-determination." (TAC ¶ 9.) On February 14, 2011, Plaintiff submitted a letter to OHA seeking funds to travel to Washington, D.C. "to

secure assistance of US Congressional Representatives for self-determination of the Hawaiian People through restoration and advancement of The Kingdom of Hawaii." (Id. ¶ 11.) OHA did not respond to Plaintiff. (Id. ¶¶ 10, 12.)

Plaintiff alleges in the TAC that OHA's refusal to provide § 5(f) trust funds to Plaintiff "has weakened and damaged the organizational structure and function of . . . The Interim Government of the Kingdom of Hawaii and thereby has left the Plaintiff and associate Officers unable to effectively advance and fulfill its worthwhile and important aims[.]" (Id. ¶ 13.) Plaintiff alleges that without 5(f) trust funds, he "has been unable to seriously effectively advance self-determination of the Native Hawaiian People, restore and advance The Kingdom of Hawaii, and fulfill such associated purposes which conform to those presented in the Hawaii Admission Act of 1959. (Id.)

The TAC alleges that OHA's refusal to provide Plaintiff with funds violates his rights under the First and Fourteenth Amendments of the U.S. Constitution and is a "Breach of Trust." (Id. ¶¶ 14–15.) Plaintiff asks that the Court order Defendants to provide him with "a fair and reasonable amount of funds to advance Election of Officers for the restored Kingdom of Hawaii, to advance self-determination of Native Hawaiians through the restoration and advancement of The Kingdom of Hawaii with the assistance of The Interim Government of The

Kingdom of Hawaii, and to travel to Washington D.C. to freely meet and speak with US Congressional Representatives in order to obtain their support, resources, and opportunities and thereby equal protection." (Id. ¶ 17.)

STANDARD OF REVIEW

I.  Motion for Judgment on the Pleadings

Rule 12(c) states, "[a]fter the pleadings are closed-but early enough not to delay trial-a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the pleadings is properly granted when the court, accepting all the allegations in the pleadings as true and construing them in the light most favorable to the nonmoving party, concludes that the moving party is entitled to judgment as a matter of law. Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009). No issue of material fact may be in dispute. Id.

When Rule 12(c) is used to raise the defense of failure to state a claim upon which relief can be granted, the standard governing the Rule 12(c) motion for judgment on the pleadings is the same as that governing a Rule 12(b)(6) motion. See McGlinchy v. Shell Chemical Co., 845 F.2d 802, 810 (9th Cir. 1988); Luzon v. Atlas Ins. Agency, Inc., 284 F. Supp. 2d 1261, 1262 (D. Haw. 2003). As a result, a motion for judgment on the pleadings for failure to state a claim may be granted "'only if it is clear that no relief could be granted under any set of facts that could

7

be proven consistent with the allegations.'" McGlinchy, 845 F.2d at 810 (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)); see also Dworkin v. Hustler Magazine, Inc., 867 F.2d 1188, 1192 (9th Cir. 1989) ("The principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing. Because the motions are functionally identical, the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog.").

Thus, "[a] judgment on the pleadings is properly granted when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., 132 F.3d 526, 528 (9th Cir. 1997) (citing McGann v. Ernst & Young, 102 F.3d 390, 392 (9th Cir. 1996)). "Not only must the court accept all material allegations in the complaint as true, but the complaint must be construed, and all doubts resolved, in the light most favorable to the plaintiff." McGlinchy, 845 F.2d at 810.

To withstand a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. A claim has "facial plausibility" if the plaintiff pleads facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1940. Although the court must accept all well-pleaded factual allegations as true, "[t]hread-bare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." Id. Nor must the court "accept as true a legal conclusion couched as a factual allegation." Id. (quoting Twombly, 550 U.S. at 555).

A party may move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c). The pleadings are closed once a complaint and an answer have been filed, assuming that there is no counterclaim or cross-claim. Doe v. United States, 419 F.3d 1058, 1061 (9th Cir. 2005).

## DISCUSSION

Defendants argue that the Court should grant them judgment on the pleadings for the following reasons: (1) OHA, as a state agency, and Apoliona and the Trustees in their official capacities are entitled to sovereign immunity from Plaintiff's claims; (2) Apoliona and the Trustees have qualified immunity; and (3) Plaintiff's claims lack merit because OHA has broad discretion to expend trust funds so long as the expenditures relate to enumerated purposes under the Admission Act. (Id. 1–2.)

As a preliminary matter, when a plaintiff appears pro se, the court has an obligation to construe the plaintiff's complaint liberally. See Bernhardt v. Los Angeles County, 339 F.3d 920, 925 (9th Cir. 2003); Jackson v. Carey, 353 F.3d 750, 757 (9th Cir. 2003) ("Pro se complaints are held to less stringent standards

9

than formal pleadings drafted by lawyers." (citation omitted)). "A pro se litigant must be given leave to amend his or her complaint unless it is 'absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987) (citation and quotation omitted), superceded by statute, Lopez v. Smith, 203 F.3d 1122, 1126–30 (determining that a district court retains its discretion to dismiss a pro se prisoner's in forma pauperis complaint with or without leave to amend under the Prisoner's Litigation Reform Act)). However, "[p]ro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).

Plaintiff's FAC alleges that OHA's "refusal" to provide Plaintiff § 5(f) trust funds constitutes a breach of trust and violates his rights under the First and Fourteenth Amendments. Specifically, Plaintiff asserts that because OHA has provided funds to individuals to travel to Washington, D.C. to support the "Akaka Bill, OHA's refusal to provide funds to Plaintiff is a violation of Plaintiff's right to Equal Protection under the Fourteenth Amendment. (FAC ¶ 15.) Plaintiff also asserts that because OHA did not provide Plaintiff with funds, Plaintiff was unable to speak freely with congressional representatives, thus violating Plaintiff's "First Amendment Right of Free Speech." (Id. ¶ 15.) Because 42 U.S.C. § 1983 is the vehicle by which a private citizen may seek recovery for violations of federal laws

10

and the United States Constitution, the Court construes Plaintiff's First and Fourteenth Amendment claims as though they were asserted under § 1983. See Azul-Pacifico, Inc. v. City of Los Angeles, 973 F.2d 704, 705 (9th Cir. 1992) ("[A] litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983.").

Defendants argue that Plaintiff's claims lack merit and specifically point to Ninth Circuit precedent stating, inter alia, that OHA has broad discretion to decide how to spend § 5(f) trust proceeds so long as spending falls within the § 5(f) enumerated purposes. The Court agrees.

A. Breach of Trust

Plaintiff alleges that Defendants' refusal to provide Plaintiff with Ceded Lands funds for uses "consistent with the purposes of the Ceded Land Funds as presented in the Hawaii Admission Act of 1959 and inasmuch as the Plaintiff is a Beneficiary of the Ceded Land Trust" is a "Breach of Trust." (TAC ¶ 14.) Native Hawaiian plaintiffs may sue under § 1983 for noncompliance with the terms of the § 5(f) trust terms. Day v. Apoliona, 496 F.3d 1027, 1039 (9th Cir. 2007) ("[E]ach Native Hawaiian plaintiff, as a beneficiary of the trust created by § 5(f), has an individual right to have the trust terms complied with, and therefore can sue under § 1983 for violation of that right.").

"Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege or immunity protected by the Constitution or laws of the United States." Leer v. Murphy, 844 F.2d 628, 632–33 (9th Cir. 1988). A person deprives another of a constitutional right if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation complained of. Id. at 633.

Defendants point to Day v. Apoliona, 616 F.3d 918 (9th Cir. 2010) ("Day II"), in which the Ninth Circuit stated that OHA trustees, although limited to spending § 5(f) trust funds only for trust purposes, "have broad discretion to decide how to serve those purposes." Id. at 926. At issue in Day II was whether OHA was spending § 5(f) trust funds for impermissible purposes. Id. at 924. Specifically, the plaintiffs in Day II challenged OHA's spending trust funds on certain projects, arguing that the trust funds were to be used to benefit only native Hawaiians.[4] Id. The Ninth Circuit examined the language in § 5(f) of the

---

[4] The plaintiffs in the Day line of cases had argued that state law required OHA to use the public trust only for the betterment of the conditions of native Hawaiians, and alternatively, that even if OHA trustees may spend for any of the § 5(f) trust purposes, they breached the trust under federal law because the challenged projects were not restricted to the enumerated purposes. Day II, 616

12

Admission Act and the enumerated five purposes for which the § 5(f) trust proceeds may be used.  Id. at 921, 924–25.  The Ninth Circuit also noted that under § 5(f), use of the trust for any other purpose would be a breach of trust.  Id. at 925.  The Ninth Circuit went on to state:  "So long as trust funds are used for 'one or more' of the enumerated purposes, however, Congress intended to leave the manner in which the trust is managed in Hawaii's sovereign control."  Id.

Moreover, the Day II Court found it "implausible that Congress gave Hawaii discretion to choose how to manage the trust yet provided for federal intervention to enforce those decisions, whatever they might be."  Id.  As a matter of federal law, "the only restriction that the statute places on § 5(f) trustees, including the OHA trustees with respect to the portion of the § 5(f) trust they administer, is that they use trust funds for enumerated purposes."  Id.  The Ninth Circuit further stated that "[t]o establish a breach of trust under [§ 5(f)] . . . plaintiffs must prove that trust funds were used for a purpose not enumerated in [that section]."  Id. at 926.

---

F.3d at 924–25.  The Ninth Circuit rejected the contention that the OHA trustees, as a matter of federal law, must spend § 5(f) trust proceeds only for the betterment of the conditions of native Hawaiians and also held that OHA had discretion to use the funds toward the challenged projects.  Id.

The Ninth Circuit also looked at the common law of trusts, explaining that under general trust principles, "a trustee's 'power is discretionary except to the extent its exercise is directed by the terms of the trust of compelled by the trustee's fiduciary duties.'" Id. at 926 (quoting Restatement (Third) of Trusts § 87 cmt. a). Therefore, "[b]ecause § 5(f) establishes broad 'purposes' and does not direct specific expenditures," OHA trustees have discretion "to determine whether a particular use of trust funds serves one or more of the trust purposes." Id. Under such circumstances, a trustee's exercise of discretion is subject to review by a court "'only to prevent abuse of discretion,'" which occurs when a trustee "'has acted unreasonably—that is, beyond the bounds of a reasonable judgment.'" Id. (quoting Restatement (Third) of Trusts § 87, § 87 cmt. c).

The Court finds the principles articulated in Day II instructive in the present case. Here, Plaintiff is asserting that OHA trustees have breached the 5(f) trust by allegedly refusing to provide trust funds to further his endeavors that fulfill the purposes enumerated in the Admission Act. However, as Day II made clear, § 5(f) does not contemplate federal intervention with regard to how the State is to allocate such funds within the enumerated purposes, and the OHA trustees have "broad discretion to decide how to serve those purposes." Id. at 925–26.

("So long as OHA trustees spend § 5(f) funds on any of the five enumerated purposes, they have not breached their federal trust obligations."). Thus, by extension, a decision by OHA Defendants to <u>not</u> use § 5(f) trust funds for certain purposes—even those that may fall within the statute's enumerated purposes—does not constitute a breach of the trust. Indeed, if Defendants enjoy broad discretion to determine how to use § 5(f) trust proceeds within the trust purposes, this discretion necessarily includes choosing what <u>not</u> to fund. To conclude otherwise would lead to a ridiculous result: that OHA Defendants must fund anything that falls within the purposes of the Trust and distribute funds pursuant to every beneficiary who claims that his or her cause serves one of the enumerated purposes of § 5(f). Such an absurd conclusion would essentially strip the Trustees of their discretion.

Accordingly, the Court finds that insofar as Plaintiff alleges that Defendants committed a breach of trust, Plaintiff does not state a cognizable claim.

B.  <u>Fourteenth Amendment</u>

Plaintiff contends that Defendants violated his right to equal protection under the law as provided by the Fourteenth Amendment of the United States Constitution by providing Akaka Bill proponents funding to travel to

15

Washington, D.C. and not providing Plaintiff with travel funds meet with U.S. congressional representatives to "secure support to advance self-determination and restoration of a governing structure of the Kingdom of Hawaii[.]" (TAC ¶ 15.)

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. In other words, a state must treat all similarly situated persons alike. High Tech Gays v. Def. Indus. Sec. Clearance Office, 895 F.2d 563, 570 (9th Cir. 1990) (citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)).

The purpose of the Equal Protection Clause of the Fourteenth Amendment is to "secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam) (quoting Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 445 (1923)); Martin v. Shawano-Gresham Sch. Dist., 295 F.3d 701, 713-14 (7th Cir. 2002). An equal protection claim may be established by showing that the defendant intentionally

discriminated against the plaintiff based on the plaintiff's membership in a protected class, Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003), Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Lazy Y Ranch, Ltd., v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff has not alleged facts demonstrating that he is being intentionally discriminated against on the basis of his membership in a protected class, or that he is being intentionally treated differently than other similarly situated individuals without a rational relationship to a legitimate state purpose.

Moreover, if what Plaintiff is alleging constitutes an Equal Protection violation, OHA's wide discretion over how to allocate its portion of § 5(f) trust proceeds would be null. See Engquist v. Or. Dep't of Agric., 553 U.S. 591, 603 (2008) (stating that where some forms of state action involve discretionary decisionmaking based on subjective, individualized assessments, "allowing a challenge based on the arbitrary singling out of a particular person would

17

undermine the very discretion that such state officials are entrusted to exercise"). Surely, Defendants cannot reasonably be expected to accommodate the requests of every single person who wishes to take a trip for a purpose enumerated in § 5(f). Yet, that would be the unreasonable consequence under Plaintiff's theory. Plaintiff simply does not state a cognizable equal protection claim.

  C. First Amendment

  Similarly, Plaintiff's First Amendment claim must fail. The First Amendment prohibits laws "abridging the freedom of speech, . . . or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. The First Amendment is applicable to the states and local governments through the Due Process Clause of the Fourteenth Amendment. Menotti v. City of Seattle, 409 F.3d 1113, 1140 n.51 (9th Cir. 2005) (citing De Jonge v. Oregon, 299 U.S. 353, 364 (1937) (some citations omitted)).

  Simply declining to pay for a trip to speak about a matter does not constitute a violation of the First Amendment. Defendants are not required to subsidize Plaintiff's lobbying activities. See Regan v. Taxation With

Representation of Washington, 461 U.S. 540, 545–46 (1983) (rejecting the "notion that First Amendment rights are somehow not fully realized unless they are subsidized by the State." (quoting Cammarano v. United States, 358 U.S. 498, 515 (1959))). Indeed, although Plaintiff "does not have as much money as [he] wants, and thus cannot exercise [his] freedom of speech as much as [he] would like, the Constitution does not confer an entitlement to such funds as may be necessary to realize all the advantages of that freedom." Id. at 550. Therefore, Plaintiff does not state a cognizable First Amendment claim.

In sum, the Court finds that Plaintiff's TAC does not state any cognizable claims for relief. Moreover, Plaintiff has been given leave to amend his claims twice and has failed to adequately do so. Therefore the Court **GRANTS** Defendants' Motion for Judgment on the Pleadings.[5]

---

[5]Because the Court has determined that Plaintiff's TAC does not state any cognizable claims, the Court need not reach Defendants' other arguments regarding sovereign and qualified immunity.

CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' Motion for Judgment on the Pleadings (Doc. # 38).

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 27, 2012.

_____
David Alan Ezra
United States District Judge

Amsterdam v. Apoliona, et al., CV No. 10-00525 DAE-BMK; ORDER: GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS